IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Christopher Giannini,	Case No. 3:15CV01379

      Plaintiff

    v.	**ORDER**

Erie County, Ohio, et al.,

      Defendants

    This is a civil rights suit in which the plaintiff, Christopher Giannini, alleges defendants Erie County, Ohio, the Erie County Sheriff's Office, Sherriff Paul Sigsworth, Dispatcher Mike Frisky, and officers Johann Matute, Daniel Orzech, Alexis Harvey, Chad Henderson, and Jared Oliver, acted pursuant to a constitutionally deficient policy and, without probable cause, arrested, detained, and maliciously prosecuted him in violation of the Fourth and Fourteenth Amendments.

    Plaintiff brings his claims under 42 U.S.C. § 1983 and Ohio law.

    Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367(a).

    Pending is defendants' Fed. R. Civ. P. 12(c) motion for judgment on the pleadings. (Doc. 8.) For the reasons that follow, I grant the motion.

**Background**

On June 23, 2014, Christopher Giannini called the Erie County Sherriff's Office to report domestic violence. Giannini alleges Selena Frias, a sixteen-year-old girl, attacked him. Frias is not a relative of Giannini; however, he took Frias in to help her family. Frias had been living with Giannini and his girlfriend for over three years.

Deputy Johann Matute responded to the call. While en route, the Deputy saw Frias and her boyfriend, Rylee Chapman, walking near Giannini's home; he stopped to interview her. After speaking with Frias, Matute proceeded to Giannini's house and "without investigation or questioning" arrested Giannini. (Doc. 1-1 at ¶6).[1]

Deputies Daniel Orzech and Alexis Harvey also arrived at Giannini's residence to assist Matute in handling the situation.

Following his arrest, Giannini remained in jail for over forty-eight hours awaiting a bond hearing. He retained and paid for an attorney to defend himself against criminal charges.

On March 13, 2015, prosecutors dismissed the charges against Giannini with prejudice. On June 19, 2015, he filed suit against defendants in the Erie County Court of Common Pleas; the defendants removed the case to this court.

In his complaint, Giannini sets forth twelve claims:

1. false arrest and false imprisonment in violation of the Fourth and Fourteenth Amendments against all defendants;

---

[1] The Complaint does not allege what Deputy Matute learned from Frias or describe her physical condition. However, the incident report and transcript of dash camera audio, which Giannini attached to his opposition to the motion to dismiss, indicate Matute observed a large red mark on Frias's chest and that her lip was swollen, bleeding, and possibly split; it is also indicated that two witnesses corroborated her claim Giannini punched her several times prior to his arrest.

2. malicious prosecution in violation of the Fourth and Fourteenth Amendments against defendants Sigsworth, Matute, Henderson, and Oliver;

3. A claim under § 1983 "for customs and policies causing constitutional violations" against defendants Erie County, Sigsworth, and Oliver (Doc. 1-1 at ¶102);

4. A claim under § 1983 claim for intentional infliction of emotional distress against "the Deputies" (Doc. 1-1 at ¶97);

5. A common law claim for false arrest and imprisonment against all defendants;

6. A common law claim for malicious prosecution against all defendants;

7. A common law claim for assault and battery against all defendants;

8. A common law claim for intentional infliction of emotional distress against all defendants;

9. A common law claim for defamation against defendants Matute and Henderson;

10. A common law claim of abuse of process against all defendants;

11. A common law claim of gross neglect against all defendants; and

12. A common law claim of negligent hiring and retention against defendants Erie County and Sigsworth.

## Discussion

### A. Standard of Review

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts generally analyze Rule 12(c) motions under the same standard as Rule 12(b)(6) motions for failure to state a claim. *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001).

As a general rule, plaintiffs only need to provide "a short and plain statement of the claim[s] showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint should give defendants "fair notice of what the plaintiff's [claims are] and the grounds upon

3

which [they rest]." *Stafford v. Jewelers Mut. Ins. Co.*, 554 F. App'x 360, 370 (6th Cir. 2014).

Although a complaint need not contain detailed factual allegations, it must have more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*.

I must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 846 (6th Cir. 2012). Dismissal is proper only if the moving party is entitled to judgment as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

### B. Federal § 1983 Claims

Giannini asserts his complaint states plausible claims that defendants violated his Fourth and Fourteenth Amendment rights. Defendants, however, argue Giannini's complaint is deficient with respect to these claims in, at least, two material respects.

First, defendants contend Giannini has failed to provide particularized allegations against each defendant, showing each personally acted adversely to his constitutional rights. Defendants argue Giannini is incorrect in his proposition that "blanket allegations against multiple defendants [are] sufficient under Rule 8(a)" to establish liability against public officials sued in their individual capacities. (Doc. 13 at 6).

Second, defendants argue Giannini's allegations lack sufficient factual matter to support a plausible claim. The complaint, defendants insist, bears no actual allegations of fact but rather is "packed with bald legal conclusions reciting the elements of [each claim] in rote." (Doc. 8 at 1).

To state a claim under § 1983, a plaintiff must set forth facts establishing (1) the

4

deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010) (internal citations omitted).

### 1. False Arrest and False Imprisonment

Giannini alleges he was unlawfully arrested without probable cause. He specifically asserts that, when defendant Matute arrived at his home in response to his 911 call, Matute arrested him summarily without questioning him or investigating what led Giannini to call 911.

Giannini's complaint, as defendants point out, does not allege a viable claim for false arrest under the Fourth Amendment or otherwise.

To state a viable claim, Giannini must allege "the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). As a general rule, "[a] police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000).

The complaint states the mere legal conclusion that Giannini was arrested without probable cause. It lacks sufficient factual matter to support the stated legal conclusion.

Read as generously as possible, the complaint provides only that Giannini called the police regarding domestic violence by a minor, the dispatched officer while en route stopped to interview the minor, and the officer then went to Giannini's home and arrested him without investigation or questioning.

Based on the stated facts, it is reasonable to infer Giannini was arrested based on information from the minor. Although Giannini argues defendant Matute did not act as a reasonable, prudent officer under the circumstances for arresting him, he provides no facts to support an inference that Matute lacked probable cause for the arrest.

5

The discussion Matute had with the minor, Frias, is the critical interaction. It either did or did not produce information supporting probable cause for arrest. Giannini seems to suggest the arrest was unlawful because the arrest followed what he perceives – and has alleged – to be an inadequate investigation. Put differently, the officer's failure to investigate further is what made the arrest lack probable cause.

This argument is legally unsound, as it inverts the analysis. In evaluating, the presence or absence of probable cause for false arrest claims, the critical variable is not what information an officer may lack but what information the officer actually possesses. *See Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (defining probable cause as "the facts and circumstances *within the officer's knowledge* that are sufficient to warrant a prudent person [to believe]…the suspect has committed, is committing, or is about to commit an offense.").

Although Giannini attempts to cast doubt on the existence of probable cause at the time of arrest by highlighting that the criminal charges were later dismissed with prejudice, his ultimate exoneration is immaterial *vis-a-vis* the issue of probable cause at the time of arrest.

That an arrest does not result in a conviction does not necessarily mean that the arrest itself was unlawful. Indeed, "[a] valid arrest based upon then-existing probable cause is not vitiated if the suspect is later found innocent." *Chambers v. Fratesi*, 2015 WL 52160, at *4 (W.D. Tenn. Jan. 2, 2015).

As other courts have recognized, "[the] bare allegation that [one] was arrested without probable cause in violation of [one's] constitutional rights is a legal conclusion, not a 'well-pleaded' fact that must be taken as true for purposes of Rule 12. [Such] attenuated allegations fail to state a viable claim under § 1983." *Huffer v. Bogen*, 2011 WL 5037209, at *11 (S.D.

6

Ohio) aff'd, 503 F. App'x 455 (6th Cir. 2012).[2]

Accordingly, Giannini has failed to state a Fourth Amendment false arrest claim against Deputy Matute.

And while the complaint states the "defendants" falsely arrested Giannini, there are no allegations that any of the other defendants were involved in the arrest – or that they acted without probable cause. (Doc. 1-1 at ¶¶74-82). Liability does not attach in a § 1983 case unless the plaintiff shows "each government-official defendant, through the official's own individual actions, has violated the Constitution… [In other words, the plaintiff] must show that his or her own rights were violated, and that the violation was committed personally by the defendant." *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014).

Giannini has failed sufficiently to particularize his allegations on the false arrest claim and it is thus insufficiently pled against virtually all of the defendants.[3]

## 2. Malicious Prosecution

Giannini also asserts a Fourth Amendment malicious prosecution claim against defendants Sigsworth, Matute, Henderson, and Oliver. The gravamen of his complaint is that he had to retain a lawyer to defend himself against criminal charges following what he (wrongly) perceived as a false arrest.

In *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006), the court recognized a

---

[2] At first blush, it may appear odd that the burden of developing facts to show a lack of probable cause is on a plaintiff, who lacks first-hand knowledge about what the officer knew. But where, as here, charges resulted, the plaintiff will have received a copy of the complaint. That document, under Ohio law, is "a written statement of the essential facts constituting the offense charged." Ohio R. Crim. P. 3. In other words, the complaint will or will not show probable cause; but the plaintiff fails to support his conclusory assertion that no such cause existed by pointing to the complaint and its alleged deficiencies.

[3] This applies to each claim made with blanket allegations asserted against all defendants.

7

"separate constitutional cognizable claim of malicious prosecution under the Fourth Amendment." Such claims encompasses wrongful investigation, prosecution, conviction, and incarceration. *Id*.

To succeed on a malicious prosecution claim under § 1983, a plaintiff must show: 1) the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute" a prosecution against him; 2) there was no probable cause to prosecute; 3) a "deprivation of liberty" resulted; and 4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

Giannini's claim fails at the outset.

Just as the complaint does not plausibly allege there was no probable cause to an arrest, it likewise, and for the same reasons fails plausibly to allege the lack of probable cause to prosecute. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 604 (6th Cir. 2012) ("[T]o prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution.")

On this basis, I find Giannini has failed to state a Fourth Amendment malicious prosecution claim against any of the defendants.

### 3. Customs and Policies Causing Constitutional Violations

Giannini asserts a § 1983 claim against defendants Erie County, Sigsworth, and Oliver, alleging the arresting officer failed to comply with Ohio Revised Code § 2935.032 and a policy of the Erie County Sherriff's Office respecting domestic violence cases.

Giannini provides no specific factual basis to support his conclusory assertions; thus, he fails to state a plausible and adequate claim for relief.

As importantly, if not more so, a violation of state law is not cognizable under § 1983.

8

That provision provides a remedy for violations of rights created by the federal Constitution and laws, not state law. 42 U.S.C. § 1983; *see McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996).

Accordingly, this claim is neither plausible nor cognizable under applicable law.

### 4. Intentional Infliction of Emotional Distress

Giannini asserts a claim of intentional infliction of emotional distress against defendants. Defendants, in response, correctly argue a claim of intentional infliction of emotional distress does not amount to a constitutional violation.

In *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 678 (6th Cir. 2005), the Sixth Circuit held "intentional infliction of emotional distress, by itself, cannot amount to a constitutional violation." Although a plaintiff can recover damages for emotion and mental anguish "caused by a due process or other constitutional violation brought pursuant to § 1983," here Giannini has no plausible claim any of the defendants violated his constitutional rights.

Accordingly, the federal claim for intentional infliction of emotional distress fails as a matter of law.

### C. State Law Claims

### 1. False Arrest and False Imprisonment

To plead a false arrest claim under Ohio law, a plaintiff must show he or she was intentionally detained and that the detention was unlawful. *Hodges v. Meijer, Inc.*, 129 Ohio App. 3d 318 (1998).

Giannini asserts his arrest was unlawful because there was no probable cause, but, as explained above, this contention lacks merit. I therefore find Giannini has failed to state a false arrest claim that is plausible on its face. *See Hinkle v. City of Columbus*, 2006 WL 827576, *4 (Ohio App.) ("[T]he issue of probable cause remains significant in a false arrest case because its

existence renders the arrest lawful.").

### 2. Malicious Prosecution

To prevail on a malicious prosecution claim, the plaintiff must show: "(1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused." *Trussell v. General Motors Corp.*, 53 Ohio St. 3d 142 (1990).

Here, Giannini's claim fails at the outset for two reasons. First, unlike federal law, Ohio law requires a showing of malice. Giannini alleges no facts from which a jury could infer the defendants acted maliciously in instituting the prosecution. Merely labeling the defendants' acts as malicious is not sufficient to state a claim.

Second, like its cognate federal claim, the state law claim fails because the complaint inadequately alleges an absence of probable cause.

Wherefore, I find Giannini has failed to state a malicious prosecution claim.

### 3. Assault and Battery

Giannini next asserts a common law claim of assault and battery against defendants, though the complaint focuses exclusively on the elements of battery.

Although defendants do not directly address this claim in their brief, their core argument, with which I agree, is that the complaint is insufficient to show Giannini's arrest was unlawful.

Under Ohio law, a person is liable for battery "when he acts intending to cause a harmful or offensive contact, and when a harmful contact results. Contact which is offensive to a reasonable sense of personal dignity is offensive contact. *Love v. Port Clinton*, 37 Ohio St. 3d 98, 99 (1988). Officers are privileged to commit what is technically battery when making a lawful arrest. *See id.* ("In effecting an arrest, a police officer…commits acts which, unless

10

privileged, constitute battery."). This privilege is only "negated by use of excessive force." *Alley v. Bettencourt*, 134 Ohio App. 3d 303, 313 (1999).

Giannini merely recites the elements of a battery claim, and he does not allege – let alone plausibly – the arresting officer used excessive force. Accordingly, Giannini has failed to state a claim of battery.

### 4. Intentional Infliction of Emotional Distress

Giannini asserts a common-law claim of intentional infliction of emotional distress against defendants. Defendants, in response, argue that charging an individual with criminal offenses that are later dismissed is not extreme and outrageous and thus the claim fails.

To prevail on an action for intentional infliction of emotional distress, the plaintiff must show: 1) the defendant either intended to cause emotional distress or knew or should have known his actions would cause serious emotional distress for the plaintiff; 2) the defendant's conduct was extreme and outrageous, went beyond all possible bounds of decency, and may be considered utterly intolerable in a civilized community; 3) the defendant's actions proximately caused psychic injury; and 4) the mental anguish plaintiff suffered is serious and of a nature that no reasonable person could be expected to endure it. *Pyle v. Pyle*, 11 Ohio App. 3d 31, 34 (1983).

Giannini's claim fails as a matter of law.

In *Voyticky*, *supra*, 412 F.3d at 678, the Sixth Circuit rejected claims of intentional infliction of emotional distress stemming from an arrest and detention. The court reasoned "[s]uch routine conduct does not approach the high standard adopted by the Ohio Supreme Court." *Id*; *see also*, *Knox v. Hetrick*, 2009 WL 792357, *8-9 (Ohio App.) (dismissing claim for intentional infliction of emotional distress by an arrestee after charged were dismissed because

11

"indignities" and "annoyances" were insufficient to sustain a claim for relief).

### 5. Defamation

Giannini asserts a defamation claim against defendants Matute and Henderson.

To state a defamation claim, the plaintiff must allege: 1) there is a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting at least to negligence by the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Akron-Canton Waste Oil v. Safety-Kleen Oil Servs*., 81 Ohio App. 3d 591, 601 (1992).

The chief problem for Giannini is his complaint does not identify any statement, or allude to the content of any statement, that is supposedly defamatory. The complaint merely states defendants Matute and Henderson published accusations that Giannini committed crimes with the knowledge that the charges were false.

The allegation is conclusory. No factual matter is provided to prompt the inference that any statements were defamatory. In addition, statements made during judicial proceedings are absolutely privileged and cannot support a defamation claim. *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St. 3d 497, 505 (1994).

For these reasons, I find Giannini has failed to plead a defamation claim.

### 6. Abuse of Process

Under Ohio law, the relevant inquiry in an abuse of process action is "whether an improper purpose was sought to be achieved by the use of a lawfully brought previous action." *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A*., 68 Ohio St. 3d 294, 300 (1994).

To state an abuse of process claim, Giannini must show: 1) a legal proceeding has been set in motion in proper form and with probable cause; 2) the proceeding has been perverted to

attempt to accomplish an ulterior purpose for which it was not designed, and 3) direct damage has resulted from the wrongful use of process. *Id*. at 298.

Here, however, Giannini has not alleged the legal proceedings set in motion rested upon probable cause; he contends there was no probable cause for those proceedings.

Moreover, there are no non-conclusory allegations the proceedings were "perverted." Although Giannini contends the defendants filed charges against him as retaliation, there are no factual allegations showing the defendants had reason to retaliate against him.

For these reasons, I will dismiss the abuse of process claim.

### 7. Gross Neglect

Under Ohio law, a public officer is liable for gross neglect when the neglect, given the gravity of the case or the frequency of the instances, is so serious in its character as to endanger or threaten the public welfare. *In re Removal of Kuehnle*, 161 Ohio App. 3d 399, 419 (2005).

Once again, Giannini's complaint provides no more than a recitation of the elements of gross neglect and legal conclusions. He simply asserts that "defendants" had a duty to refrain from acts or omissions resulting in an injury, that "defendants" breached this duty by acting willfully and recklessly without legal justification, and as a result, Giannini sustained injury. (Doc. 1-1 at ¶¶68-73).

Giannini alleges no facts regarding the specific action, or set of actions, taken by any particular defendant to suggest liability. The nature of the alleged injury even gets no mention. Giannini rests his claim on blanket, conclusory allegations.

Accordingly, I find Giannini has insufficiently pled his claim of gross neglect.

### 8. Negligent Hiring and Retention

Finally, Giannini asserts a cause of action against defendants Erie County and Sigsworth

for negligent hiring and retention.

Defendants respond Erie County has immunity from this claim in accord with O.R.C. § 2744.02(A)(1). Giannini maintains that a statutory exception to general immunity applies in this case.

Under the statute, "a political subdivision is immune from liability" unless "any of the five exceptions to immunity listed in § 2744.02(B) [applies.]" *Cramer v. Auglaize Acres*, 113 Ohio St. 3d 266, 266 (2007).

Giannini argues the specific exception enumerated in § 2744.02(B)(2) applies. That exception provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." O.R.C. § 2744.02.

The training and retention of officers, contrary to Giannini's argument, is not a "proprietary function" for purposes of the immunity statute.

"Governmental function" includes those functions "imposed upon the state as an obligation of sovereignty," "[that] is for the common good of all citizens…," "that promotes or preserves the public peace, health, safety, or welfare," and "that involves activities that are not engaged in…by nongovernmental persons." O.R.C. § 2744.01(C)(1).

"Proprietary functions" are those functions not described in § 2744.01(C)(1). O.R.C. § 2744.01(G)(1).

The training and retention of officers fits within the definition of a governmental function and therefore none of the immunity exceptions apply. *See Johnson v. City of Cleveland*, 194 Ohio App. 3d 355 (2011) (holding the City was entitled to immunity on the claims of negligent hiring, retention, and supervision of emergency medical services, as no enumerated exceptions

apply); *see also McCloud v. Nimmer*, 72 Ohio App.3d 533 (1991).

Defendant Sigsworth is also immune because the statute provides "immunity [to] political subdivision employees" except where: 1) an employee's acts or omissions were manifestly outside the scope of employment; 2) those acts had a malicious purpose or were performed in a wanton or reckless manner; or 3) the Revised Code expressly imposes liability on the employee. *Munday v. Vill. of Lincoln Heights*, 2013-Ohio-3095, ¶ 41 (Ct. App.).

Here, Giannini alleged no particularized facts his complaints but merely stated conclusory allegations based upon the relevant elements. Consequently, the complaint does not support any inference that defendant Sigsworth has acted in any manner as to lose his entitlement to immunity.

Accordingly, I find Giannini has failed to state a claim of negligent hiring and retention.

### D.  Request for Leave to Amend

Plaintiff also asks, if I grant the motion to dismiss, I grant leave to amend any deficient parts of his complaint.

Federal Rule of Civil Procedure 15(a) states a court should grant leave to amend when justice so requires. *La. Sch. Employees' Ret. Sys. v. Ernst & Young*, LLP, 622 F.3d 471, 486 (6th Cir.2010). However, a "party seeking leave to amend must file a motion stating its grounds for amending the complaint with particularity." *Brown v. Whirlpool Corp.*, 996 F.Supp.2d 623, 647 (N.D.Ohio 2014) (*citing Evans v. Pearson Enter.*, 434 F.3d 839, 853 (6th Cir.2006)). "A bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought ... does not constitute a motion within the contemplation of Rule 15(a)." *La. Sch. Employees' Ret. Sys.*, *supra*, 622 F.3d at 486; *Howse v. Owens-Illinois, Inc*. 86 F. Supp. 3d 738, 743-44 (N.D. Ohio 2014).

Here, Giannini has not filed a motion for leave to amend, nor tendered a proposed copy of the amended complaint. Thus, he has given no indication how he intends to cure the defects in his complaint, even though defendant's motion to dismiss put him on notice of those defects.

Absent a proper motion and any reasons as to why I should grant leave to amend, I decline Giannini's offhand request.

## Conclusion

Long on conclusory assertions, but fatally short on factual underpinning for those assertions, the complaint in its entirety fails completely to state any actionable claims under § 1983 or state law that would entitle Giannini to relief.

It is, therefore,

ORDERED THAT defendants' motion for judgment on the pleadings (Doc. 8) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge